# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ERICA ROHDE | Civil No. 14-4546 (JRT/TNL) |
| Plaintiff, | |
| | **MEMORANDUM OPINION** |
| v. | **AND ORDER ON CROSS MOTIONS** |
| | **FOR SUMMARY JUDGMENT** |
| CITY OF BLAINE, | |
| Defendant. | |

Adam T. Johnson, **LUNDGREN & JOHNSON, PSC**, 101 Fifth Street East, Suite 1700, St. Paul, MN  55101, and Richard E. Student, **MESHBESHER & ASSOCIATES, P.A.**, 225 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, MN  55402, for plaintiff.

Vicki A. Hruby, **JARDINE LOGAN & O'BRIEN PLLP**, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN  55402, for defendant.

Plaintiff Erica Rohde was convicted and sentenced for possession of drugs and drug paraphernalia based on evidence that police officers employed by defendant City of Blaine (the "City") found in an inventory search while impounding Rohde's car.  Rohde appealed her charges to the Minnesota Supreme Court, which reversed, holding that the impoundment was not justified under the Fourth Amendment because Rohde was not arrested prior to the impoundment and because her vehicle did not pose a safety threat. Consequently, Rohde brought the instant action against the City pursuant to 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in which she alleges that the City's written impoundment policy compelled its police officers to impound her vehicle and conduct an inventory search in violation of her Fourth

Amendment rights to be free from unreasonable searches and seizures.  Both parties have moved for summary judgment.

Because the Court finds there is no genuine issue of material fact regarding either the unconstitutional nature of the search or that the search was conducted pursuant to the City's mandatory written impoundment policy, the Court will grant Rohde's motion for partial summary judgment on the issue of the City's liability, and the Court will deny the City's motion for summary judgment.

## BACKGROUND

### I.   INVESTIGATION AND IMPOUNDMENT

On September 11, 2012, Blaine Police Officer Barry Koch was surveilling a residence suspected of narcotics trafficking.  (Aff. of Richard Student ("Student Aff."), Ex. A ("Omnibus Hr'g Tr.") at 53:17-20, Mar. 14, 2016, Docket No. 34.)  Officer Koch had information that a Chevrolet Monte Carlo vehicle was potentially connected to the residence.  (*Id.* at 63:11-14; 66:2-4.)  Officer Koch observed a Chevrolet Monte Carlo vehicle leave the residence, but he confirmed the license plate sequence was not the same as the vehicle potentially connected to the residence.  (*Id.* at 53:20-54:2.)  Nevertheless, he conducted a registration check of the vehicle, which indicated the registered owner had a revoked driver's license and the vehicle registration was also revoked. (*Id.* at 54:3-7.)  Officer Koch then requested Blaine Police Officer Albert Champagne stop the vehicle.  (*Id.* at 54:16-24.)

The vehicle came to a stop on a residential street in response to Officer Champagne's emergency lights. (*Id.* at 34:16-21; 35:5-7.) Officer Koch testified that the vehicle was not interfering with traffic, causing a traffic hazard, blocking access to any property, or otherwise violating any parking rules.[1] (*Id.* at 73:25-74:24.) Upon approaching the vehicle, Officer Champagne identified the driver and vehicle owner as Rohde. (*Id.* at 36:25-37:3.) Officer Champagne explained he stopped the vehicle for a signaling violation and because Rohde's license and registration were revoked. (*Id.* at 12:7-16.) When Officer Champagne asked for proof of insurance, Rohde indicated that the car was not insured. (Aff. of Vicki A. Hruby ("Hruby Aff."), Ex. C ("Champagne Dep.") at 10:3-12, Mar. 15, 2016, Docket No. 40.) Accordingly, Officer Champagne testified:

> I told [Rohde] that she would have to step out of the vehicle at this point. It is department policy for violations of no insurance that we do tow the

---

[1] The City argues that Officer Champagne consistently testified the Monte Carlo vehicle was disrupting the flow of traffic and that the squad video shows that east-bound traffic had to cross the center line of the road and enter the west-bound lane to avoid the vehicle. However, Officer Champagne testified at the omnibus hearing that the vehicle was not blocking traffic, but that traffic had to go into the west side of the roadway. (Omnibus Hr'g Tr. at 36:11-21.) Officer Champagne later stated during his deposition that "[t]raffic had to move over as you can review in the squad [video] you can see the vehicles turning into or moving over," and that he did not remember being asked about whether the Monte Carlo vehicle was blocking traffic at the omnibus hearing. (Aff. of Vicki A. Hruby ("Hruby Aff."), Ex. C ("Champagne Dep.") at 8:18-9:25, Mar. 15, 2016, Docket No. 40.) This testimony does not support Defendant's argument that Officer Champagne "consistently testified" the vehicle disrupted traffic. Furthermore, the squad video shows vehicles passing by Officer Champagne's vehicle gave wide berth due to the fact his emergency lights were activated and that he was stationed behind and further away from the curb than the Monte Carlo. Thus, if anything, it was the police vehicle, rather than Rohde's, that impeded traffic. This is consistent with Officer Koch's testimony and with the Minnesota Supreme Court's factual finding that "[t]he Monte Carlo pulled over to the side of a residential street and was not interfering with traffic." *State v. Rohde*, 852 N.W.2d 260, 262 (Minn. 2014).

vehicle and do a vehicle inventory.  So at that point she was escorted to the back of my car where she was secured.  Officer Koch then arrived and began a vehicle inventory per department policy.

(Omnibus Hr'g Tr. at 12:10-18.)   Officer Koch testified, however, that Officer Champagne told him the specific grounds for the impoundment was because Rohde did not have liability insurance on the vehicle, had a revoked driver's license, and had revoked vehicle registration.  (Hruby Aff., Ex. D ("Koch Dep.") at 9:18-24.)[2]

Officer Champagne explained to Rohde that she was "technically" under arrest, by which he meant that she was not free to leave at the moment.  (Hruby Aff., Ex. E ("Squad Video") at 2:52.)  Despite telling her this, Officer Champagne did not plan to take her to jail, and instead allowed her to call her mother to attempt to arrange a ride.[3]  (Omnibus Hr'g Tr. at 43:9-15; Squad Video at 16:29:48.)  During the course of the inventory search, Officer Koch located methamphetamine and drug paraphernalia in Rohde's

---

[2] The parties dispute the reason why Officer Champagne decided to impound Rohde's vehicle – Rohde points to Officer Champagne's testimony that her vehicle was impounded for lack of insurance, whereas the City points to Officer Koch's testimony that the vehicle was going to be impounded for lack of insurance, revoked license, and revoked registration.  However, the dispute is not a material issue, as the parties agree that Officer Champagne impounded Rohde's vehicle pursuant to the City's General Order 312.01.  (Def.'s Mem. in Supp. of Mot. at 4, Mar. 15, 2016, Docket No. 39 ("[a]ccordingly, Officer Champagne determined that Plaintiff's vehicle was going to be impounded pursuant to General Order 312.01 . . . "); Pl.'s Mem. in Supp. of Mot. at 14, Mar. 14, 2016, Docket No. 33 ("[Officer Champagne] testified in the affirmative when asked 'based on an assessment of the facts and circumstances you concluded impoundment of Ms. Rohde's vehicle was mandatory under Section A of the policy.'").

[3] The City's assertion that Rohde was under arrest at this time is not supported by the uncontroverted facts.  Although Officer Champagne told Rohde that she was "technically" under arrest, Officer Champagne did not plan to arrest Rohde or take her to jail, as demonstrated by the fact that he allowed Rohde to call her mother to attempt to arrange a ride.  The Minnesota Supreme Court likewise found that Rohde was not under arrest at this time.  *Rohde*, 852 N.W.2d at 262, 265-66.

vehicle.   (Squad Video at 16:33:00; Champagne Dep. at 11:11-18, 18:9-19.) Accordingly, Officer Champagne placed Rohde in handcuffs and advised her that she was under arrest.  (Champagne Dep. at 18:20-24; Squad Video at 16:43:59.)

## II.     THE CITY'S WRITTEN IMPOUNDMENT POLICY

At the time Rohde's vehicle was impounded, the City maintained a written policy, General Order § 312.0, addressing the Blaine Police Department's impoundment of vehicles.  (Hruby Aff., Ex. B ("Olson Dep.") at 13:8-20; *id.*, Ex. A ("General Order") at 1-2.)  General Order § 312.01(A) states in pertinent part that "[m]otor vehicles **shall** be impounded" if the vehicle is stopped and it is determined that the driver's license is revoked or that the driver does not have liability insurance.[4]  Subsection B also provides that "[m]otor vehicles **may** be impounded" under certain circumstances not relevant to the present case.   Furthermore, General Order § 312.03 – Inventory Procedure for Impounded Vehicles – instructs "[a]n inventory of all vehicles impounded will be

---

[4] General Order § 312.01(A) provides, in part, that:

Motor vehicles **shall** be impounded under the following circumstances:

* * *

9. The motor vehicle has been stopped on a public street or highway and it is determined that the driver or passengers (if present) are not legal (Suspended, Revoked, Cancelled, No Driver's License . . . etc.) or physically able to drive.

10. The motor vehicle has been stopped on a public highway, street, or road and it is determined that the driver or owner does not have liability insurance pursuant to Minnesota Statute 169.797.

conducted.  This inventory includes the trunk, glove box, compartments and all locked or unlocked containers within the vehicle."

Officer Champagne testified at the omnibus hearing that the circumstances of Rohde's case – revoked driver's license and no insurance – fell within the mandatory impoundment category of General Order § 312.0.  (Omnibus Hr'g Tr. at 16:21-17:8.)  He also answered in the affirmative during his deposition when asked whether "based on an assessment of the facts and circumstances [he] concluded impoundment of Ms. Rohde's vehicle was mandatory under Section A of the policy."  (Champagne Dep. at 16:10-14.)  Likewise, he testified that the inventory search of Rohde's vehicle was conducted pursuant to the inventory provisions of General Order § 312.03.  (*Id.* at 16:18-18:8.)

Police Chief Christopher Olson – the City's designated Rule 30(b)(6) witness – testified that there could be any number of factual scenarios which present exceptions to the mandatory dictates General Order § 312.01(A) and that the word "shall," does not divest the officers of their discretion to adapt and respond to the circumstances confronting them.  (Student Aff., Ex. D at 7:15-20, 16:1-17:4, 24:16-22, 30:14-21.)  He also explained that the City's General Orders are "guideline[s] of boundaries of what we expect of our officers."  (*Id.* at 7:3-5.)

## III.    UNDERLYING STATE CRIMINAL CASE

Rohde was charged with fifth-degree possession of a controlled substance, under Minn. Stat. § 152.025, subd. 2(a)(1), and possession of drug paraphernalia, under Minn.

Stat. § 152.092, based on evidence that officers found during the inventory search of Rohde's car. *State v. Rohde*, 852 N.W.2d 260, 261 (Minn. 2014).

Rohde requested an omnibus hearing and moved to suppress the evidence that Officer Koch had found in her vehicle. *Id.* at 263-64. Rohde then stipulated that the initial stop was lawful, but argued that the search violated the Fourth Amendment because the police were not authorized to impound her vehicle. *Id.* at 263. The district court denied Rohde's motion to suppress, and found Rohde guilty on both counts following a stipulated-facts trial. *Id.* Rohde appealed, and the court of appeals affirmed, holding that impoundment of the vehicle was lawful under various Minnesota statutes.[5] *State v. Rohde*, 839 N.W.2d 758, 763-64 (Minn. Ct. App. 2013), *rev'd* 852 N.W.2d 260.

The Minnesota Supreme Court reversed and remanded, holding that the focus on whether the impoundment was authorized by Minnesota law was misplaced, as state law is not determinative of whether a search is reasonable under the Fourth Amendment. *Rohde*, 852 N.W.2d at 264-65. The court turned to *South Dakota v. Opperman*, 428 U.S. 364 (1976), in which the Supreme Court stated that police may "seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience" pursuant to their "community caretaking functions". *Id.* at 265 (quoting *Opperman*, 428

---

[5] *See* Minn. Stat. § 169.79, subd. 1 (requiring a motor vehicle to be properly registered and have plates confirming its valid registration to park on any highway), Minn. Stat. § 169.011, subd. 81 (defining highway as the "width between boundary lines of any way or place when any part thereof is open to the use of the public . . . for the purposes of vehicular traffic"); Minn. Stat. § 65B.48, subd. 1 (requiring motor vehicle owners to maintain liability insurance); Minn. Stat § 169.797, subds. 2, 4 (stating a vehicle owner who operates a vehicle without insurance is guilty of a misdemeanor).

U.S. at 368-69). The court found that Rohde's vehicle was not violating any parking laws, impeding traffic, or posing a threat to public safety, thus immediately impounding her vehicle was not necessary for public safety. *Id.* The court also rejected that the police officers had any caretaking authority to protect Rohde's property from theft or protect the police from claims arising therefrom, because at the time the search began, Rohde was present, retained control over the vehicle, and was not under arrest as evidenced by the fact that she was allowed to call her mother to attempt to arrange a ride. *Id.* at 265-66. Thus, the court concluded the impoundment was not justified under the Fourth Amendment and the inventory search violated Rohde's constitutional rights. *Id.* at 266.

## IV.   STATE FORFEITURE PROCEEDINGS

Concurrent with the criminal charges, Rohde's vehicle was subject to forfeiture proceedings. On or about October 10, 2012, Rohde challenged the forfeiture and filed a demand for judicial determination of forfeiture pursuant to Minn. Stat. § 609.5314, subd. 3. (*See* Hruby Aff., Ex. G ("Stipulation") at 1.) Parties to the action included Rohde as plaintiff and her Monte Carlo vehicle as defendant.[6] The Blaine Police

---

[6] The statute governing the forfeiture proceeding dictates a complaint seeking judicial determination of a forfeiture "must be captioned in the name of the claimant as plaintiff and the seized property as defendant." Minn. Stat. § 609.5314, subd. 3(b).

Department was a party of interest, represented by the Anoka County Attorney's Office.[7]

(*Id.* at 1-2.)

Following the Minnesota Supreme Court's decision in Rohde's case, the parties agreed to resolve the matter and release to Rohde the title of the vehicle at issue.  (*Id.* at 1.)  As part of that Stipulation, Rohde agreed on September 5, 2014:

> [t]hat Plaintiff unconditionally releases Anoka County, the Blaine Police Department and their agents, employees and officers from all claims, demands, damages, causes of action or suits of whatever kind arising out of the seizure, retention, release or return of said property.

(*Id.* at 2.)  Pursuant to the Stipulation, the court ordered the return of the vehicle title to Rohde and dismissed the forfeiture action with prejudice.  (*Id.* at 3-4.)

## V.    PROCEDURAL BACKGROUND

Rohde filed her complaint on October 29, 2014, alleging that the City's impoundment policy mandated the search and seizure of her vehicle in violation of her Fourth Amendment rights.  Rohde filed a motion for partial summary judgment on March 14, 2016, and the City filed its motion for summary judgment on March 15, 2016.

---

[7] *See* Minn. Stat. § 609.531, subd. 5 ("All right, title, and interest in property subject to forfeiture under sections 609.531 to 609.5318 vests in the appropriate agency upon commission of the act or omission giving rise to the forfeiture," and the property "is deemed to be in the custody of the appropriate agency subject to the orders and decrees of the court having jurisdiction over the forfeiture proceedings."); Minn. Stat. § 609.531, subd. 1(e) (defining "appropriate agency" to include a city police department).

# DISCUSSION

## I.      STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009).  If the plaintiff's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.   STATE FORFEITURE PROCEEDING

The City asserts in its motion for summary judgment that Rohde is barred from bringing the instant action as a result of her release of claims in the Stipulation and res judicata from the forfeiture proceedings.

### A.   Stipulation of Settlement

The Stipulation released, "Anoka County, the Blaine Police Department and their agents, employees and officers from all claims," but does not mention the "City of Blaine." (Stipulation at 2.) The City contends because a release of the Blaine Police Department is legally meaningless as the department has no separate legal existence by itself and is not a suable entity, any lawsuit regarding the actions or policies of the Blaine Police Department would necessarily have to name the City as a defendant. *See Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (finding a police department was not a "juridical entit[y] suable as such" because it was "simply [a] department[] or subdivision[] of the City government"). Accordingly, the City asserts, it was an intended third-party beneficiary of the release, and by executing the Stipulation, Rohde released all claims she could have pursued against the City.

The Stipulation from the forfeiture proceeding is unambiguous and contains no language providing for the release of Rohde's claims against the City. The City attempts to avoid the impact of the Stipulation's plain and unambiguous language by arguing that by writing "Blaine Police Department," the parties meant to include the "City of Blaine." Nonetheless, "[w]hen the language is clear and unambiguous, [courts] enforce the agreement of the parties as expressed in the language of the contract." *Dykes v. Sukup*

*Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010) (stating a settlement agreement is a contract).  The Stipulation includes no language regarding Rohde's release of claims against the "City of Blaine," the "City," the "Municipality," or the like, and had the parties – who were represented by counsel – intended to include such a release, they certainly could have named the City.[8]  Thus, the Court finds that the Stipulation did not release Rohde's *Monell* claim against the City.[9]

---

[8] Furthermore, the release against the Blaine Police Department was not meaningless, as departments and subdivisions of a municipality can be proper parties to administrative claims or actions.  *See, e.g., Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 195 (Minn. Ct. App. 2010) (concluding although the police department waived its argument of whether it was a property party to a charge of discrimination, "the ordinance at issue . . . permit[ted] an individual to bring a charge of discrimination against the city or a political subdivision of the city").  Finally, the City relies on *McCoy v. City of Monticello*, for the argument that Rohde's release of the police officers for the underlying claim would also release the City.  411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").  But, in *McCoy*, the Eighth Circuit found only that, because the individual officer's conduct was not unconstitutional, the municipality could not be found liable for an unconstitutional policy or custom.  There was no discussion of whether a release of a claim against a police officer would necessitate a conclusion that the officers did not act unconstitutionally.

[9] The City cites to *Booth v. Gades*, 788 N.W.2d 701 (Minn. 2010), and *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539 (8th Cir. 1987), to support its argument that the plain language of the release required the City, through its employees, to return the motor vehicle title to Rohde, and in exchange Rohde unequivocally released call claims she had against the City and its employees.  However, neither case explains why the Court should interpret the Stipulation to release the City.  Unlike the instant action where Rohde's *Monell* claim is a direct and independent claim against the City, in *Booth*, the Minnesota Supreme Court held that a plaintiff's settlement with a firefighter destroyed the city's vicarious or derivative liability for the firefighter's alleged negligence.  788 N.W.2d at 707-08.  Thus, *Booth* does not support the argument that releasing Blaine Police Department agents, employees, and officers from all claims releases the City from a direct and independent *Monell* claim.  Also distinguishable from the instant action, the issue in *Lancaster* was what type of claim – rather than who – was released by a settlement agreement.  809 F.2d at 540-41 (holding an employee's release of its employer from "each and every claim of any kind . . . resulting from [his] termination of employment" included a release of the employer for an Age Discrimination in Employment Act claim).

### B.     Res Judicata

"Res judicata applies as an absolute bar to a subsequent claim when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).  The parties agree that regarding the third element, "[a] judgment based on a settlement agreement is a final judgment on the merits, but only with respect to those issues and claims actually settled." *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 736 n.1 (Minn. Ct. App. 1995) (citing *In re Estate of Bush*, 224 N.W.2d 489, 500 (Minn. 1974)).  As the Court found that the Stipulation did not settle Rohde's *Monell* claim against the City, res judicata also does not apply to the instant action.

## III.     CONSTITUTIONALITY AND *MONELL* LIABILITY FOR IMPOUNDMENT

The parties bring cross motions for summary judgment on the constitutionality of the impoundment and inventory search of Rohde's vehicle and whether liability extends to the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### A.     Municipal Liability Under *Monell*

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

42 U.S.C. § 1983.  In *Monell*, the Supreme Court held that a municipality is a "person" that can be liable under § 1983.  436 U.S. at 690.  A municipality may be held liable for the unconstitutional acts of its employees when (1) a municipal policy or custom exists, and (2) that policy or custom was the "moving force [behind] the constitutional violation[s]."  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (first alteration in original) (quoting *Monell*, 436 U.S. at 694).  The parties do not dispute that General Order § 312.0 is a municipal policy, but dispute whether there was an underlying constitutional violation, and whether General Order § 312.0 was the moving force behind such violation.

### 1.      Constitutionality of Impoundment

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Warrantless searches are unreasonable unless an exception to the search warrant requirement applies.  *Katz v. United States,* 389 U.S. 347, 357 (1967).  Inventory searches are "a well-defined exception to the warrant requirement."  *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).  "Because it is the act of impoundment that 'gives rise to the need for and justification of the inventory [search],' the threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper."  *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (alteration in original) (quoting *State v. Goodrich*, 256 N.W.2d 506, 510 (Minn. 1977)).

The Supreme Court stated that, "[i]n the interests of public safety and as part of . . . 'community caretaking functions,' automobiles are frequently taken into police custody." *Opperman*, 428 U.S. at 368 (internal citation omitted). Under the community caretaking function, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369. In *Opperman*, the Court explained that police, pursuant to the community caretaking function, may remove automobiles involved in a vehicle accident, as such a removal permits the uninterrupted flow of traffic and may also preserve evidence. *Id.* at 368. Police may also remove and impound automobiles "where the process is aimed at securing or protecting the car and its contents." *Id.* at 373-74. In *Opperman*, the Supreme Court held the police were engaged in a caretaking search of a lawfully impounded automobile when the owner left his car illegally parked in a restricted zone for an extended period of time and "was not present to make other arrangements for the safekeeping of his belongings." *Id.* at 375-76.

It is undisputed that at the time Rohde's vehicle was impounded, her vehicle registration was revoked and she did not have liability insurance. The City argues that the impoundment was proper under *Opperman* because Rohde's vehicle was illegally parked on a public roadway in violation of Minn. Stat. § 169.79, subd. 1, which provides that, "[n]o person shall operate, drive, or park a motor vehicle on any highway unless the vehicle is registered in accordance with the laws of this state," as well as Minn. Stat.

§ 65B.48, subd. 1, and Minn. Stat. § 169.797, subd. 2, which make it a crime for a vehicle to be on a public roadway when it is uninsured.

However, none of these statutes vests authority in police officers to immediately impound a vehicle in violation of these sections. Instead, Minn. Stat. § 168B.04 and Minn. Stat. § 168B.035, subd. 3(b)(1)-(17), set forth specific circumstances in which impounding a vehicle is authorized. Impoundment for driving without proper registration or proper license plates is not an authorized circumstance under § 168B.035, subd. 3(b)(1)-(17). Thus, if the impoundment of Rohde's vehicle was authorized, it would have been under Minn. Stat. § 168B.04, subd. 2(b)(1), which presents additional circumstances for impoundment of a vehicle "in a public location not governed by section 168B.035." Under that subdivision, impoundment of a vehicle such as Rohde's was only authorized after it has been left unattended for four hours and properly tagged by a peace officer, which did not happen in this case.[10]

Furthermore, even if the Minnesota statutes called for impoundment in the circumstances provided by General Order § 312.01, the existence of such law would not be dispositive of the constitutional question. *Sibron v. New York*, 392 U.S. 40, 61 (1968). Unlike *Opperman*, Rohde was present and able to make arrangements for her vehicle. As

---

[10] The Minnesota Supreme Court considered whether the impoundment was authorized by Minnesota statutes, and found "none of the [Minnesota] statutes expressly allow or prohibit impoundment under the circumstances of this case. The parties' statutory arguments, therefore, are not definitive." *Rohde*, 852 N.W.2d at 264. The Minnesota Supreme Court's conclusion requires deference. "The construction of state statutes . . . is peculiarly a matter for the state courts, and their construction will be accepted by the federal courts." *Schevenell v. Blackwood*, 35 F.2d 421, 426 (8th Cir. 1929).

*Opperman* stated, "as in all Fourth Amendment cases, we are obliged to look to **all** the facts and circumstances of this case."   428 U.S. at 375 (emphasis added).   A close examination of the Eighth Circuit cases that the City relies upon in support of its argument that the impoundment was constitutional reveals the existence of other facts relevant to and distinguishable from the instant action.

The City notes that in *United States v. Martin*, the Eighth Circuit stated, "the Supreme Court [in *Opperman*] held that the Fourth Amendment is not violated when police impound and conduct an inventory search of an illegally parked vehicle."   982 F.2d 1236, 1240 (8th Cir. 1993).   The issue in *Martin,* however, did not involve an illegally parked vehicle and the court went on to state, "[t]he [*Opperman*] Court explained that, in many situations, impounding reasonably serves the interests of public safety and 'community caretaking functions,' and that an inventory search is reasonable to protect the owner's property while the car is in custody and to protect the police from disputes over lost or stolen property."   *Id.* at 1240.   Furthermore, the *Martin* court's holding that no Fourth Amendment violation occurred rested on a number of circumstances not present here: (1) there were drugs in plain view, (2) there was no one present to claim responsibility for the vehicle, and (3) the officers arrested an occupant of the vehicle.   *See id.*   The other cases that the City relies upon are also distinguishable. *See e.g.*, *United States v. Rowland*, 341 F.3d 774, 778 (8th Cir. 2003) (finding no constitutional violation where impoundment was based on reasonable suspicion that the

vehicle was stolen and because the vehicle constituted a traffic hazard on Iowa interstate highway in winter).[11]

Unlike the aforementioned cases, there is no indication that impoundment of Rohde's vehicle served a community caretaking or public safety function.   The impoundment of Rohde's vehicle was not based on the officers noticing anything suspicious in plain view, Rohde was present and able to exercise custody over her vehicle, Rohde was not under arrest during the period before the police found the controlled substance in her vehicle, Rohde was cooperative with the police, and her vehicle did not impede traffic or create a traffic hazard.   Although Rohde could not legally drive the vehicle, she was "available to protect the vehicle and its contents . . . and to eventually make arrangements" for her vehicle to be removed.   *United States v. Bridges*, 245 F. Supp. 2d 1034, 1037 (S.D. Iowa 2003) (finding no impoundment of defendant's vehicle did not serve an identifiable community caretaking or public safety function wherefore the driver's license was suspended, there was no arrest, and the

---

[11] *See also United States v. Stephens*, 350 F.3d 778, 780 (8th Cir. 2003) (noting the driver in the case was arrested, the police observed a firearm in plain view before the impoundment, and the Eighth Circuit failed to address whether the impoundment served the public safety interest and community caretaking function); *United States v. Mayfield*, 161 F.3d 1143, 1144 (8th Cir. 1998) (holding impoundment reasonable where driver was under arrest and passenger informed officers she could not drive because of her medication and requested a ride to her doctor's appointment); *United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996) (justifying traffic stop and inventory search after the driver was arrested for driving on a suspended driver's license); *Triemert v. Washington Cty.*, No. 13-1312, 2013 WL 6729260, at *2, *11 (D. Minn., Dec. 19, 2013) (not discussing impoundment or inventory searches at all but holding that no viable Fourth Amendment violation arose from Triemert's arrest, and subsequent tow, once Triemert refused to answer the police officers' questions and refused to cooperate with sobriety tests).

parked vehicle presented no threat to safety in a parking lot stall).  The Court finds –
consistent with the Minnesota Supreme Court – that the Blaine officers' impoundment
violated Rohde's Fourth Amendment rights, which satisfies the first element of *Monell*
liability.

### 2.    The City's General Order § 312.0

The next element for Rohde's *Monell* claim requires establishing that the City's
General Order § 312.0 was the "moving force" behind the unconstitutional impoundment.
*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing *Monell*, 436 U.S. at
694).  This can be established if "a particular municipal action itself violates federal law,
or directs an employee to do so."  *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389
(8th Cir. 2007) (quotation omitted).  However, when a municipal policy provides an
officer with discretion to act and does not compel unconstitutional action, then the policy
itself does not violate federal law or direct an employee to violate federal law.
*Hollingsworth v. City of St. Ann*, 800 F.3d 985, 992 (8th Cir. 2015) (holding city Taser
policy was not unlawful on its face and did not compel unconstitutional action because it
gave officers discretion over when to deploy the Taser).

In contrast to the city policy in *Hollingsworth*, there is nothing within General
Order § 312.01(A) that vests officers with discretion.  Under the plain language of
General Order § 312.01, impoundment is mandatory when a driver has a revoked driver's
license or lacks liability insurance.  *See* General Order § 312.01(A) ("Motor vehicles
**shall** be impounded under the following circumstances . . . ."); *cf. id.* § 312.01(B)

("Motor vehicles **may** be impounded under the following circumstances . . . ."). Furthermore, Officer Champagne testified at the omnibus hearing that the circumstances of Rohde's case – revoked driver's license and no insurance – would fall within the mandatory impoundment category of General Order § 312.0.  He also answered in the affirmative during his deposition when asked if he  "concluded impoundment of Ms. Rohde's vehicle was mandatory under Section A of the policy."  (Champagne Dep. at 16:10-14.)

The City points to Chief of Police Olson's testimony that General Order § 312.0 provided the officers with guidelines, but still allowed the officers to exercise discretion to respond to a number of factual scenarios that could not be specifically enumerated in the impoundment policy.  However, every scenario where a law enforcement officer acts pursuant to a mandatory policy is necessarily premised on that officer first determining the particular relevant facts and circumstances, including for example, whether a parked vehicle is blocking traffic or presents a public safety hazard.  Although such factual determinations certainly involve an officer exercising some level of discretion, there is no discretion in then applying a mandatory policy to the known facts.

Furthermore, *Monell* does not require a plaintiff to prove a given policy operates unlawfully to the entire universe of imaginable facts – rather a plaintiff may rely on "a particular municipal action [that] violates federal law, or directs an employee to do so." *Szabla*, 486 F.3d at 389.  Based on Officer Champagne's testimony that the impoundment was mandatory pursuant to General Order § 312.0 and considering the plain language of

General Order § 312.0, the Court finds the municipal policy was the moving force for impounding Rohde's vehicle in violation of her Fourth Amendment rights.[12]   Because General Order § 312.01(A) compelled the impoundment of Rohde's vehicle without regard to any community caretaking functions as set out in *Opperman*, the Court will grant Rohde's motion for partial summary judgment on the issue of the City's liability, and the Court will deny the City's motion for summary judgment.

This case will be placed on the Court's next available trial calendar.

---

[12] As the instant action involves a municipal policy rather than a municipal custom, the Court is also not persuaded by the City's citation to *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985), *Mettler*, 165 F.3d at 1205, and *Thelma D. v. Board of Education*, 934 F.2d 929, 933 (8th Cir. 1991), for the proposition that a single incident of alleged activity does not impose *Monell* liability against the City.   The Court in *Tuttle* held that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, **unless** proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy," which is at issue in the instant action.   471 U.S. at 823-24 (emphasis added). Furthermore, *Mettler* and *Thelma* involved municipal customs rather than municipal policies. *See Mettler*, 165 F.3d at 1204 (holding that the words "policy" and "custom" are not interchangeable for *Monell* liability purposes, and that a plaintiff seeking to prove the existence of a municipal custom must demonstrate "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" (quotation omitted)); *Thelma*, 934 F.2d at 933 (stating that to establish existence of governmental custom, a plaintiff must prove a pattern of unconstitutional conduct).

As a final basis for summary judgment, the City argues that even if the impoundment of Rohde's vehicle was improper, the officers' reasonable mistake of law renders their conduct constitutional.   However, this action consists of a *Monell* claim against the City under § 1983.   In *Owen v. City of Independence*, the Supreme Court held that neither history nor policy supported a construction of § 1983 that would allow a municipality to assert the good faith of its officers as a defense to liability. 445 U.S. 638, 657 (1980).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Rohde's Motion for Partial Summary Judgment [Docket No. 31] is **GRANTED**.

2.      The City's Motion for Summary Judgment [Docket No. 37] is **DENIED**.

DATED:  January 18, 2017                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                   Chief Judge
                                           United States District Court